UNITED STATES of America, Appellee,

v.

Maynard Francis HAYES, Appellant.

No. 11032.

United States Court of Appeals Fourth Circuit.

Argued Oct. 2, 1967.

Decided Nov. 2, 1967.

See also, 4 Cir., 378 F.2d 567.

Kenneth Lasson, Baltimore, Md. (Court-appointed counsel), [Robert G. Fisher and Nelson B. Lasson, Baltimore, Md., on the brief], for appellant.

Alan I. Baron, Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, SOBELOFF and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

Maynard Francis Hayes appeals his conviction on four counts for transporting falsely made checks in interstate commerce in violation of 18 U.S.C.A. § 2314. His sole contention is that certain incriminating statements elicited from him and used against him at trial were obtained in contravention of his constitutional rights as enunciated in the Su-

preme Court's recent *Miranda* decision.[1] After careful consideration of the circumstances in this case, we affirm the conviction.

Acting on an outstanding federal warrant, four F.B.I. agents arrested Hayes in Atlantic City, New Jersey at about 1:45 p. m. on March 7, 1966. After transporting him to the local police station, the agents began their interrogation by identifying themselves and warning Hayes in a deliberate, conversational tone that he was not required to make any statements, that any statements he did make could be used against him in court, that he could have the services of a lawyer before making any statements, and that if he could not afford one, a lawyer would be retained for him. This the appellant does not dispute. He keys his appeal to the fact that following these warnings, he was not asked whether he understood them or whether he desired counsel. Nor did he volunteer such information. He asserts that as a matter of law in the absence of an express statement he could not have made an intelligent, knowledgeable and voluntary waiver of his Fifth and Sixth Amendment rights.

Following the warnings and before any questioning began, Hayes requested and was given permission to make a telephone call. The record is devoid of any information about the call; it is therefore unknown whom he called or what he discussed. Upon his return from the phone, he was asked leading questions and he responded incriminatingly. He did not volunteer any statements, nor did he make a confession. After approximately thirty minutes of questioning, Hayes declared that he would provide no additional information and demanded consultation with an attorney before signing anything. At this point, all interrogation ceased.

Appellant is correct in his position that a heavy burden rests upon the government to prove that a person in custody "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda v. State of Arizona, supra, 384 U.S. at 475, 86 S.Ct. at 1628. However, he is inaccurate when he contends that federal courts apply a talismanic approach in determining whether this burden has been satisfied. Just as the mere signing of a boilerplate statement to the effect that a defendant is knowingly waiving his rights will not discharge the government's burden, so the mere absence of such a statement will not preclude as a matter of law the possibility of an effective waiver.

In reiterating the strong presumption against waiver and the high standards of proof needed to overcome this presumption, the Court in *Miranda* relied upon Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), in which the Court unequivocally stated:

> "The determination of whether here has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

Johnson v. Zerbst, supra, 304 U.S. at 464, 58 S.Ct. at 1023. Similarly, in a post-*Miranda* decision, the Fifth Circuit observed:

> " * * * the cases in which it is clear that the warnings have been given must be considered on their own facts in order to determine the question of waiver. The courts must do this on an *ad hoc* basis, since no *per se* rule has thus far been adopted dealing with this problem."

Narro v. United States, 5 Cir., 370 F.2d 329–330 (1966).

Thus, we cannot accept appellant's suggestion that because he did not make a statement—written or oral—that

1. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This case is directly applicable here, since the trial was held after June 13, 1966.

See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

he fully understood and voluntarily waived his rights after admittedly receiving the appropriate warnings, his subsequent answers were automatically rendered inadmissible. Of course, the attendant facts must show clearly and convincingly that he did relinquish his constitutional rights knowingly, intelligently and voluntarily, but a statement by the defendant to that effect is not an essential link in the chain of proof. On the other hand, mere silence of the accused followed by grudging responses to leading questions will be entitled to very little probative value in light of the inherently coercive atmosphere of in-custody interrogation. The government will have to prove more.

*Miranda* admonishes: "The warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent*, prerequisites to the admissibility of any statement made by a defendant." (Emphasis supplied.) Miranda v. State of Arizona, supra, 384 U.S. at 476, 86 S.Ct. at 1629. We simply decide today that strong and unmistakable circumstances, upon occasion, may satisfactorily establish such an equivalent.

We turn now to an examination of the circumstances of the present case to determine whether they are sufficiently weighty to demonstrate defendant's knowing and voluntary waiver. Appellant, admitting the sufficiency of the warnings, requested a hearing before the trial court on the "voluntariness" of the contested statements. At that hearing appellant's attorney directed his questioning to the absence of any declaration by the defendant that he understood his rights. The lower court found the incriminating statements "voluntary" and hence admissible, thereby impliedly finding that Hayes had made a constitutionally permissible waiver. This implicit finding is well-substantiated.

■ Hayes was captured in the middle of the afternoon and does not allege any physical or psychological coercion. The agents testified that Hayes appeared physically healthy and alert. When he arrived at the station house he was fully advised of his constitutional rights. When he immediately thereafter sought leave to telephone someone, leave was granted. As soon as he indicated a wish that the questioning be terminated and that he be allowed to consult an attorney, the F.B.I. agents complied with his request. That he had the presence of mind and the liberty to make a phone call and to demand an attorney shortly after receiving the requisite warnings strongly supports the inference that Hayes understood the warnings and voluntarily relinquished his rights.

Against these telling circumstances, the appellant offered no evidence. He produced no witnesses putting in question his apparent intellectual endowments. Moreover, it is noteworthy that at no stage in the proceedings has the appellant ever denied that he understood the warnings given him, and while a defendant does not have the obligation to testify himself or to offer testimony, a court cannot supply evidence that is lacking. Cf. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The poise and cunning he displayed, according to the testimony of eyewitnesses, in passing in rapid succession a series of false checks in fashionable apparel stores in the suburbs of Washington belie the hypothetical arguments made by his counsel on appeal that Hayes may have become unnerved after his capture and therefore unable to think clearly.

In light of the strong circumstances appearing here, we conclude that Hayes did in fact make an intelligent, knowing and voluntary waiver and that the incriminating statements were properly admitted.

Affirmed.