Michael Rene Pardue was convicted on August 14, 1973, of murder and was sentenced to life imprisonment. The United *Page 269 
States District Court for the Southern District of Alabama, on November 18, 1992, granted Pardue's petition for habeas corpus relief and ordered the State of Alabama to either grant Pardue an out-of-time appeal or release him.
The Court of Criminal Appeals granted Pardue's out-of-time appeal and considered the legal issues that he raised, but affirmed his conviction, which was more than 20 years old.Pardue v. State, 661 So.2d 263 (Ala.Cr.App. 1993). This Court granted Pardue's petition for a writ of certiorari, to review several issues that Pardue presented. We think the dispositive issue is whether the Court of Criminal Appeals erred in holding that the trial court did not err when it admitted Pardue's alleged confession into evidence, over his objection.
We set out some of the basic facts for a better understanding of the issue. In the early morning hours of May 22, 1973, the body of Ronald Rider was found in the service station where he worked. Rider had been shot in the head with a shotgun. Michael Pardue, who was 17 years old at the time, was arrested that afternoon. Later that same day, an attorney, David Barnett, arrived at the police station, claiming to represent Pardue. Barnett advised the police not to talk to Pardue. Robert Stewart, the chief investigator for the Baldwin County Sheriff's Department, testified that Pardue's family stated that Barnett did not represent Pardue.
Around 8:30 p.m. on May 23, 1973, after Pardue had been in custody for approximately 30 hours, Stewart took Pardue's statement. Stewart testified that before taking his statement he read Pardue his Miranda rights and Pardue signed a waiver form. There is no evidence of any prior Miranda warnings. Stewart testified that he asked Pardue if Barnett was his attorney and that Pardue replied that "he didn't know how Mr. Barnett got into the case." Stewart testified that no inducements were offered to Pardue to get him to give a statement. Stewart also testified that he did not know how long the police had been questioning Pardue, but that they were talking to him when he went to talk to him.
According to Stewart, Pardue told him that on May 22, 1973, he and Theresa Lanier had met at a motel in Mobile. Stewart said that Pardue told him that they left the motel in a stolen pick-up truck and went to Baldwin County to meet John Brown. Stewart testified that Pardue told him that they drove to Thoni's gasoline station and pretended that the truck was overheated. Stewart said that Pardue told him that they entered the station and that he held a .410 shotgun on Rider. Stewart testified that Pardue told him that Brown removed money and keys from Rider's pockets and went out of the station to get a crowbar for Rider to use to open the locked safe. According to Stewart, Pardue said that while Rider was opening the safe with the crowbar, he threw the crowbar at Pardue and Pardue shot him. Theresa Lanier testified that Pardue did not shoot Rider but that he had handed the gun to Brown while Rider was opening the safe and that Brown shot Rider.
After Pardue's conviction, he filed a notice of appeal, but that appeal was dismissed by the attorney then representing him, on October 29, 1973; the District Court for the Southern District of Alabama granted Pardue habeas corpus relief and ordered the State to grant him an out-of-time appeal or to release him. The State agreed to grant Pardue an out-of-time appeal, and as stated above, the Court of Criminal Appeals affirmed Pardue's conviction.
Pardue argues that the trial court's admission into evidence of his alleged confession in his trial was prejudicial because, he says, the State failed to show that it was voluntarily given. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
In Ex parte Williams, 627 So.2d 999, 1002-03 (Ala. 1993), this Court, quoted from Jackson v. State, 516 So.2d 726, 741
(Ala.Crim.App. 1985), remanded on other grounds,516 So.2d 768 (Ala. 1987), as follows:
 " 'Pursuant to Alabama law, a statement made subsequent to an arrest is prima facie involuntary and inadmissible at trial; thus, the State must prove the statement was voluntarily made and must lay a Miranda predicate before the statement is *Page 270 
admissible. Thomas v. State, 373 So.2d 1167 (Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); Lewis v. State, 295 Ala. 350, 329 So.2d 599 (1976). Whether a waiver is voluntarily, knowingly, and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background, experience, and conduct of the accused — the totality of the circumstances. Chandler v. State, 426 So.2d 477, 478 (Ala.Crim.App. 1982) (citing Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)); Myers v. State, 401 So.2d 288, 291 (Ala.Crim.App. 1981), and cases cited therein. See also Dunkins v. State, 437 So.2d 1349 (Ala.Crim.App.), aff'd, 437 So.2d 1356
(Ala. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984); Harris v. State, 420 So.2d 812 (Ala.Crim.App. 1982); Rogers v. State, 417 So.2d 241 (Ala.Crim.App. 1982); Dolvin v. State, 391 So.2d 677 (Ala. 1980). "Any clear manifestation of a desire to waive is sufficient. The test is the showing of a knowing intent, not the utterance of a shibboleth." Lloyd v. State, 45 Ala. App. 178, 184, 227 So.2d 809, 814 (1969) (quoted with approval in Rogers v. State, 417 So.2d at 248). The trial judge need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made. Harris v. State, 420 So.2d at 814. The voluntariness of a statement is a question of law for the court, to be determined upon preliminary proof, taken outside the presence of the jury, and such finding will not be disturbed on appeal unless it appears contrary to the great weight of the evidence, or is manifestly wrong. Marschke v. State, 450 So.2d 177
(Ala.Crim.App. 1984), and cases cited therein.' "
Similarly, in Jackson v. State, 562 So.2d 1373, 1380
(Ala.Crim.App. 1990), the Court of Criminal Appeals set out the principles of law that govern our review of a trial judge's determination that a confession was voluntary:
 "A defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession and even though there is ample evidence aside from the confession to support the conviction. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Ex parte Hill, 557 So.2d 838 (Ala. 1989). A confession is prima facie involuntary and inadmissible, and the state must show voluntariness and a Miranda predicate in order for it to be admitted. Thomas v. State, 373 So.2d 1167 (Ala. 1979), vacated on other grounds, 448 U.S. 903
[100 S.Ct. 3043, 65 L.Ed.2d 1133] (1980); Lewis v. State, 535 So.2d 228 (Ala.Cr.App. 1988); Magwood v. State, 494 So.2d 124 (Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995
[107 S.Ct. 599, 93 L.Ed.2d 599] (1986).
 "Whether there was a waiver of the right to remain silent and the right to counsel and, if so, whether it was knowingly, voluntarily, and intelligently made must be decided from the particular facts and circumstances of each case, including the background, experience, and conduct of the accused — the totality of the circumstances. Thomas v. State; Lewis v. State; Magwood v. State.
 "The fundamental requirements for voluntariness of confessions are that the court must conclude, in order to find a defendant's confession voluntary, that he made an independent and informed choice of his own free will, that he possessed the capacity to do so, and that his will was not overborne by pressures and circumstances swirling around him. Jurek v. Estelle, 623 F.2d 929
(5th Cir. 1980) (en banc), cert. denied, 450 U.S. 1001 [101 S.Ct. 1709, 68 L.Ed.2d 203] (1981); Lewis v. State. The test is whether, considering the totality of the circumstances, law enforcement officials have overborne the will of the accused. Haynes v. Washington, 373 U.S. 503 [83 S.Ct. 1336, 10 L.Ed.2d 513] (1963); Townsend v. Sain, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963); Culombe v. Connecticut, 367 U.S. 568
[81 S.Ct. 1860, 6 L.Ed.2d 1037] (1961). The factual inquiry centers on the conduct of the law enforcement officials in creating pressure and the suspect's capacity to resist that pressure. *Page 271 Mincey v. Arizona, 437 U.S. 385 [98 S.Ct. 2408, 57 L.Ed.2d 290] (1978); Martin v. Wainwright, 770 F.2d 918 (11th Cir. 1985); Jurek v. Estelle. The defendant's personal characteristics as well as his prior experience with the criminal justice system are factors to be considered in determining his susceptibility to police pressures. Fikes v. Alabama, 352 U.S. 191 [77 S.Ct. 281, 1 L.Ed.2d 246] (1957); Stein v. New York, 346 U.S. 156
[73 S.Ct. 1077, 97 L.Ed. 1522] (1953); Haley v. Ohio, 332 U.S. 596 [68 S.Ct. 302, 92 L.Ed. 224] (1948); Martin v. Wainwright.
 "The question of whether a confession was voluntary is initially to be determined by the trial court. Ex parte Singleton, 465 So.2d 443
(Ala. 1985). Thereafter, the voluntariness as affecting the credibility and weight to be given any statement that an accused has made is a determination for the jury. Id. The finding of the trial court will not be disturbed on appeal unless it appears to be contrary to the great weight of the evidence or is manifestly wrong. Lewis v. State; Magwood v. State; Marschke v. State, 450 So.2d 177 (Ala.Cr.App. 1984). Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Chambers v. State, 455 So.2d 1008
(Ala.Cr.App. 1984). The trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made. Ex parte McCary, 528 So.2d 1133 (Ala. 1988); Ex parte Singleton; Lewis v. State."
562 So.2d at 1380-81. The State does not disagree as to the requirements of the law relating to the admissibility of confessions, but contends that the question of the admissibility of the alleged confession was not properly preserved for appeal. The State argues that Pardue's trial counsel failed to make a specific objection when the confession was offered into evidence, contending that counsel's statement "[w]e move to exclude any statement made [by the defendant]" was not specific enough to invoke a ruling from the trial court. We have examined the record and we hold that the issue was properly preserved, because the trial court affirmatively denied counsel's motion to exclude the confession. The State further says that "[a]ssuming, arguendo, that the Petitioner's motion to exclude was sufficient to preserve error in the trial court's ruling on the grounds argued by the Petitioner, the State submits that the argument is meritless," because, says the State, "the Petitioner's confession followed properMiranda warnings and a valid waiver and was voluntarily and intelligently entered."
We have reviewed the record of Pardue's trial. It appears that the State began its questioning of Stewart by laying a predicate for testimony regarding Pardue's waiver of rights and confession. Immediately after the State asked Stewart whether Pardue had signed the statement voluntarily and Stewart had answered affirmatively and before the State asked about the contents of the statement, Pardue's counsel asked the court for permission to take Stewart on voir dire examination outside the presence of the jury. On voir dire examination, Stewart testified that he knew that an attorney, David Barnett, was at the police station claiming to be Pardue's lawyer and instructing the police not to question Pardue without him being present. He testified that Pardue's family said that Barnett did not represent Pardue and that when Pardue was asked whether Barnett represented him, Pardue said that he did not know how Barnett got into the case. Stewart also testified that Pardue's alleged confession was taken around 8:30 p.m. on May 23, 1973, about 30 hours after Pardue was arrested, and that he advised Pardue of his rights immediately before taking Pardue's alleged statement. Stewart said that he did not know how long Pardue had been interrogated before he went at 8:30 to take his statement, but that Pardue was being questioned when he arrived. After the voir dire examination and the return of the jury, Pardue's counsel moved "to exclude any statement made." The trial court denied the motion. We hold that this was sufficient to preserve the issue of the admissibility of the alleged confession for appeal on the grounds *Page 272 
of voluntariness, violation of Miranda, and violation of the right to counsel. See Goodson v. State, 540 So.2d 789, 791
(Ala.Crim.App. 1988) ("The proper procedure to raise the issue of voluntariness in the trial court would have been a timely motion to suppress and a voir dire examination, outside the presence of the jury, from which the court could determine the admissibility of the confession."). The Court of Criminal Appeals also impliedly held that the issue was preserved, by addressing the merits of the issue in its opinion.
Pardue contends that his alleged confession violatedMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), because he was in custody for more than 30 hours before his rights were read to him and was undergoing interrogation at least some of that time. He argues that the facts of his case are very similar to the facts of Westover v. United States, one of the four cases consolidated in the United States Supreme Court's Miranda opinion. Miranda, 384 U.S. at 436, 494,86 S.Ct. at 1602, 1638.
In the Westover case, Carl Calvin Westover was arrested around 9:45 p.m. on March 20, 1963. The local police interrogated him the night of his arrest. He denied the charges against him. The next day the police interrogated him again throughout the morning. There was no evidence that he was advised of his rights at any time during the interrogations. Around noon on March 21, 1963, three FBI agents continued the interrogation at the local police department. After about two or two and a half hours, Westover signed separate confessions to two robberies. A paragraph in each confession said that he had been advised that he did not have to make a statement, that any statement he made could be used against him, and that he had the right to see an attorney. The United States Supreme Court reversed his conviction, saying:
 "At the time the FBI agents began questioning Westover, he had been in custody for over 14 hours and had been interrogated at length during that period. The FBI interrogation began immediately upon the conclusion of the interrogation by the Kansas City police and was conducted in local police headquarters. Although the tv law enforcement authorities are legally distinct and the crimes for which they interrogated Westover were different, the impact on him was that of a continuous period of questioning. There is no evidence any warning given prior to the FBI interrogation nor is there any evidence of an articulated waiver of rights after the FBI commenced its interrogation. The record simply shows that the defendant did in fact confess a short time after being turned over to the FBI following interrogation by the local police. Despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover's point of view the warnings came at the end of the interrogation process. In these circumstances an intelligent waiver of constitutional rights cannot be assumed."
Miranda, 384 U.S. at 495-96, 86 S.Ct. 1639.
We do not see how Pardue's circumstances differed significantly from those presented in Westover. Westover was held for over 14 hours before his confession, while Pardue was held for around 30 hours before his confession. In both cases, there was no evidence of any warning given before the interrogation. Both Westover and Pardue signed statements expressly indicating that they ha been informed of their rights and had waive them. In both cases, the warnings came at the end of the interrogation process, from the point of view of the accused.
Applying the principles set forth in Westover v. UnitedStates, which was decide with Miranda v. Arizona at384 U.S. 497, 86 S.Ct. 1602, and the principles of law set out inJackson v. State, 562 So.2d 1373, 1380 (Ala.Crim.App. 1990), we hold that the Stat did not meet its burden in this case; therefore, we reverse the judgment of the Court (Criminal Appeals affirming the defendant's conviction. Having reversed on this issue, we find it unnecessary to address the other issues raised by the defendant.
REVERSED AND REMANDED.
ALMON, SHORES, HOUSTON, and KENNEDY, JJ., concur.
STEAGALL and INGRAM, JJ., dissent. *Page 273